▬ MARK RAPPOLD et al., Individually and as Legal Co-Guardians of DAVID RAPPOLD, Respondents, v SNORAC, INC., Doing Business as ENTERPRISE RENT-A-CAR, Appellant, and LAURENCE A. TREMBLING et al., Respondents. (Appeal No. 6.) [735 NYS2d 458] —Order unanimously modified on the law and as modified affirmed without costs in accordance with the same Memorandum as in *Rappold v Snorac, Inc.* ([appeal No. 7] 289 AD2d 1044 [decided herewith]). (Appeal from Order of Supreme Court, Erie County, Burns, J.—CPLR art 50-B.) Present—Pigott, Jr., P. J., Wisner, Scudder, Kehoe and Lawton, JJ.

▬ MARK RAPPOLD et al., Individually and as Legal Co-Guardians of DAVID RAPPOLD, Respondents, v SNORAC, INC., Doing Business as ENTERPRISE RENT-A-CAR, and LAURENCE A. TREMBLING et al., Appellants. (Appeal No. 7.) [735 NYS2d 687] —Order and judgment unanimously modified on the law and as modified affirmed without costs and new trial granted on damages for past and future pain and suffering and future medical and life care expenses unless plaintiffs, within 20 days of service of a copy of the order of this Court with notice of entry, stipulate to reduce the verdict for past pain and suffering to $1 million, for future pain and suffering to $6 million, and for future medical and life care expenses to $8 million, in which event the order and judgment is modified accordingly and as modified affirmed without costs and matter remitted to Supreme Court for further proceedings pursuant to CPLR article 50-B in accordance with the following Memorandum: On July 18, 1998, plaintiffs' son, who was then 22 years old and had just completed his first year of law school, was a passenger in a vehicle, owned by defendant Snorac, Inc., d/b/a Enterprise Rent-a-Car (Snorac), and driven by defendant Eric J. Barton. Barton and defendant Laurence A. Trembling engaged in what police termed "road tag," which began when Barton entered the passing lane of the New York State Thruway, "cutting off" Trembling's vehicle. Trembling continued to follow closely behind Barton's vehicle, flashing his headlights off and on. According to one eyewitness, the two drivers changed lanes several times, with Trembling following Barton very closely and both vehicles traveling in excess of 75 miles per hour. At one point, Barton moved into the driving lane, and Trembling passed Barton. Barton then remained approximately 20 car lengths behind Trembling's vehicle for a

number of miles until the Trembling vehicle began to slow down. Barton did not slow down and, as he closed in on the Trembling vehicle, he pulled into the passing lane at a speed in excess of 85 miles per hour, according to an eyewitness and plaintiffs' experts, although Barton admitted only to a speed of 75 miles per hour. According to Barton, when his vehicle was only a few feet from the rear bumper of Trembling's vehicle, Trembling entered the passing lane in front of Barton's vehicle and applied his brakes. When Barton observed the brake lights on Trembling's vehicle, he swerved to the right to avoid striking it but, as he did so, he lost control of the vehicle, causing it to spin into the median, where it struck a tree on the passenger side.

According to Trembling and his passenger, Trembling entered the passing lane to pass the vehicle in front of him and then observed Barton's vehicle bearing down on his vehicle. He then applied the brakes because he was too close to the vehicle in front of him, passed the vehicle in the driving lane and returned to the driving lane, unaware that the accident had occurred. An eyewitness, however, had recorded the license plate number of Trembling's vehicle and police located Trembling. As a result of his actions, Trembling was convicted of reckless endangerment in the second degree (Penal Law § 120.20), reckless driving (Vehicle and Traffic Law § 1212), unsafe lane change (Vehicle and Traffic Law § 1128 [a]) and speeding (Vehicle and Traffic Law § 1180 [d]). Barton was convicted of unsafe lane change (Vehicle and Traffic Law § 1128 [a]) and speeding (Vehicle and Traffic Law § 1180 [d]).

Supreme Court properly granted plaintiffs' motion for partial summary judgment on the issue of liability. Plaintiffs established that the conduct of both Barton and Trembling contributed to the accident, and defendants failed to raise an issue of fact. The evidence submitted in support of the motion establishes that the unsafe lane changes and excessive speed of Barton and Trembling were proximate causes of the accident. Where only one conclusion may be drawn from the established facts, the legal cause of the accident may be determined as a matter of law (*see, Derdiarian v Felix Contr. Co.*, 51 NY2d 308, 315, *rearg denied* 52 NY2d 784). We reject the arguments of Barton and Trembling that the conduct of the other was a superseding, intervening cause of the accident. Each of those defendants is responsible for his own negligent conduct because the actions of each were not extraordinary or unforeseeable in the context of this continuing "road rage" incident (*see, Holloway v Willette Corp. of N. J.*, 280 AD2d 876, 878; *see generally,*

*Gordon v Eastern Ry. Supply,* 82 NY2d 555, 562). Plaintiffs need not establish that the "precise manner in which the accident happened or the injuries occurred was foreseeable; it is sufficient that [they] demonstrate that the risk of some injury from defendants' conduct was foreseeable" (*Gordon v Eastern Ry. Supply, supra,* at 562).

We reject the further contention of Barton that he was entitled to have a jury evaluate the reasonableness of his evasive actions in light of the sudden emergency created when Trembling's vehicle cut him off. A defendant is entitled to the benefit of the emergency doctrine only if the emergency presented is "not of [his] own making" (*Caristo v Sanzone,* 96 NY2d 172, 175). Here, any emergency situation in which Barton found himself was caused or contributed to by his own negligent conduct.

The evidence at the trial on damages established that, as a result of the accident, plaintiffs' son suffered a severe brain injury that impaired cognitive function and most physical functions, resulting in the need for around-the-clock care. He is for the most part paralyzed on the left side of his body. He cannot feed or groom himself, walk, or use a motorized wheelchair because of his cognitive and/or physical limitations. He can speak only a few words, and he communicates by blinking his eyes, making hand gestures, and shaking his head. He is aware of the effect of his injuries on his life and recognizes that he cannot return to law school. He also recognizes that he can no longer engage in athletics or play the piano, activities that he enjoyed prior to the accident.

The jury returned a verdict in the amount of $47,452,460.66 in favor of plaintiffs, consisting of $3 million for past pain and suffering; $12 million for future pain and suffering; $452,460.66, the stipulated amount for past medical expenses; $23 million for future medical and life care expenses based on a 41-year life expectancy; and $9 million for lost wages or impaired earning ability based on a 39-year working life expectancy. Defendants brought posttrial motions seeking to set aside the verdict as excessive (*see,* CPLR 4404). The court granted the motions in part and granted a new trial unless plaintiffs stipulated to reduce the award for future lost wages or impaired earning ability from $9 million to $4 million. Although plaintiffs took a cross appeal from that portion of the order, they have not perfected it. We reject Trembling's contention that the award for future lost wages or impaired earning ability as modified by the court is too speculative.

We conclude that the court erred in denying those parts of

the motions of defendants seeking to set aside the awards for past and future pain and suffering and future medical and life care expenses. Although the jury's finding on the amount of damages to be awarded is accorded "considerable deference," that finding may not stand where, as here, it deviates materially from what would be reasonable compensation (*Karney v Arnot-Ogden Mem. Hosp.*, 251 AD2d 780, 782, *lv dismissed* 92 NY2d 942; *see,* CPLR 5501 [c]). Upon our review of comparable cases with respect to past and future pain and suffering (*see, e.g., Nowlin v City of New York,* 182 AD2d 376, 377, *affd* 81 NY2d 81, *rearg denied* 81 NY2d 1068; *Brown v City of New York,* 275 AD2d 726, *lv denied* 96 NY2d 709; *Driscoll v New York City Tr. Auth.,* 262 AD2d 271; *Karney v Arnot-Ogden Mem. Hosp., supra,* at 783; *Bermeo v Atakent,* 241 AD2d 235, 239; *Doe v State of New York,* 189 AD2d 199, 203) and with respect to future medical and life care expenses (*see, e.g., Bryant v New York City Health & Hosps. Corp.,* 93 NY2d 592, 599; *Royal v Booth Mem. Med. Ctr.,* 270 AD2d 243; *Driscoll v New York City Tr. Auth., supra; Pay v State of New York,* 213 AD2d 991, *revd on other grounds* 87 NY2d 1011), we modify the order and judgment in appeal No. 7 by modifying the order entered July 14, 2000 and granting those parts of the motions seeking to set aside the verdict as excessive with respect to those damages, and we grant a new trial on those damages unless plaintiffs, within 20 days of service of a copy of the order of this Court with notice of entry, stipulate to reduce the verdict for past pain and suffering to $1 million, for future pain and suffering to $6 million, and for future medical and life care expenses to $8 million. In the event that plaintiffs so stipulate, the order and judgment is modified accordingly and the matter is remitted to Supreme Court for further proceedings pursuant to CPLR article 50-B. In view of our determination in appeal No. 7, we modify the order in appeal No. 6 by vacating those portions that do not concern future lost wages or impaired earning ability, and we affirm that portion of the order that concerns future lost wages or impaired earning ability for reasons stated in decision at Supreme Court (Burns, J.). (Appeals from Order and Judgment of Supreme Court, Erie County, Burns, J.—Damages.) Present—Pigott, Jr., P. J., Wisner, Scudder, Kehoe and Lawton, JJ.