[757 NYS2d 244]

Angela Reed, Respondent, v City of New York et al., Appellants.

First Department, February 13, 2003

**APPEARANCES OF COUNSEL**

*Fred R. Profeta, Jr.,* of counsel, Brooklyn (*Profeta & Eisenstein* and *Dansker & Aspromonte Associates*, attorneys), for respondent.

*Grace Goodman* of counsel, New York City (*Larry A. Sonnenshein* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for appellants.

### OPINION OF THE COURT

NARDELLI, J.P.

In this personal injury action arising out of an accident in which a pedestrian was grievously injured by a negligently operated New York City Police Department motor scooter, defendant City of New York now concedes liability, but asks us to reduce the jury's award of approximately $6 million or order a new trial on damages. For the following reasons, we decline to do so.

On September 14, 1993, at approximately 6:15 P.M., then 43-year-old plaintiff Angela Reed, who was employed at the New York Stock Exchange, was taking an early evening walk along the pedestrian promenade in Battery Park, which is located in lower Manhattan. The promenade is closed to all private motor vehicles. Defendant New York City Police Officer Kenneth Hardiman and New York City Police Officer Edward Serrano, both of whom were assigned to the First Precinct, were riding along the promenade on their police motor scooters in order to get to their post at the corner of West and Liberty Streets, where they were to assist in traffic control for a five-kilometer race.

Lieutenant Carrillo, of the New York City Parks Department Police, who was a sergeant at the time of the accident, testified that the speed limit for Parks Department vehicles traveling along the promenade is five miles per hour and that there were approximately 1,000 people in the mall area when the accident occurred. Officer Hardiman testified that he was riding along the center of the promenade, which was approximately 15 feet wide, at 10 to 15 miles per hour, when he first saw plaintiff approximately 80 feet in front of him. Officer Hardiman, depending on who was testifying, either blew his motor scooter's horn once (Officer Hardiman), three times (Lieutenant Carrillo), or continuously (Officer Serrano).

Officer Hardiman claimed that as he approached plaintiff, she was to his left on the water side of the promenade with her back to him and that when he blew his horn, she moved to the right and then back to the left. At that point, Officer Hardiman testified that plaintiff turned to face him and he swerved to his left, but not sufficiently to avoid plaintiff, and that he struck plaintiff's right shoulder with his right shoulder. Officer Hardiman agreed with plaintiff's counsel's description of the impact as "heavy," which caused him to be ejected from his scooter and make contact with a stationary pole, rendering him unconscious. Officer Hardiman, as the result of his injuries, sustained three broken ribs, a chest contusion and chip fractures of the elbow, and missed 100 days of work.

Officer Serrano testified that after being struck by Officer Hardiman, plaintiff fell straight back, striking her head on the promenade, and appeared to be unconscious when he attempted to render aid. Lieutenant Carrillo testified that there was blood on the pavement around plaintiff's head, and plaintiff remembered being disoriented and throwing up continuously in the ambulance transporting her to the hospital.

The trial of this matter took place over a five-day period in January and February 2000. Plaintiff put on an extensive case at trial, which included testimony by economic and medical expert witnesses, whereas defendants, despite having retained a neurologist to examine plaintiff, called only Officer Hardiman to testify and offered no expert testimony whatsoever. At the conclusion of the trial, the jury found defendants solely liable[1] and awarded plaintiff $6,328,000, of which $2,566,000 was for past damages encompassing $2,500,000 for pain and suffering, $56,000 for lost earnings, and $10,000 for loss of household services. The jury also awarded $3,762,000 in future damages, including $2,500,000 for pain and suffering for 30 years, $132,000 for psychological therapy for 15 years, $180,000 for physical therapy for 30 years, $250,000 for loss of household services for 30 years, and $700,000 for reduction in earnings capacity for 15 years.

Defendants subsequently moved for an order, pursuant to CPLR 4404, granting a new trial on the issues of liability and damages or, in the alternative, setting aside the award of damages as excessive and directing a substantial reduction in the award or, in the alternative, granting a new trial solely on the issue of damages. Defendants asserted, inter alia, that they should have been permitted to cross-examine plaintiff with regard to her medical coverage, that it was error to allow plaintiff to introduce the bill for scooter repairs[2] into evidence, as the admission thereof was irrelevant and prejudicial, that the verdict was excessive on a number of grounds, and that allowing plaintiff to introduce expert testimony on possible future illnesses which may afflict her as the result of her injuries, which were not disclosed in pretrial discovery, was error.

Plaintiff cross-moved for an order, pursuant to CPLR 3025 (c), for leave to amend her bill of particulars to conform to the

1. Indeed, during a charge conference, the court commented that there was nothing to justify charging the jury as to comparative negligence, although such charge was given.

2. Remarkably, 15 months after the accident, the City sent plaintiff an invoice for $960, representing the amount of damage to the scooter as the result of the accident. We assume plaintiff declined to pay this bill.

medical evidence presented at trial. The motion court granted defendants' motion only to the extent of reducing, on plaintiff's consent, the jury's award for future lost earnings from $700,000 to $167,015, and granted plaintiff's cross motion to amend the bill of particulars. Defendants appeal and we now affirm.

The scope of our review of the jury award in this matter is prescribed in CPLR 5501 (c), as amended in 1986 (L 1986, ch 682, § 10), which provides, in pertinent part:

> "In reviewing a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division *shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation*" (emphasis added).

Prior to 1986, New York courts would generally not disturb an award unless the amount was so exorbitant, or so inadequate, that it shocked the conscience of the court (*Harvey v Mazal Am. Partners*, 79 NY2d 218, 225; *Donlon v City of New York*, 284 AD2d 13, 16; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5501:10, at 25). The adoption of the "deviates materially" standard in 1986 was part of a series of tort reform measures which were triggered by an insurance crisis arising out of spiraling costs and excessive verdicts (*see Donlon v City of New York, supra* at 15). In a memorandum reflecting his approval of the amendment, then-Governor Mario Cuomo emphasized that "[t]his will assure greater scrutiny of the amount of verdicts and promote greater stability in the tort system and greater fairness for similarly situated defendants throughout the State" (Mem approving L 1986, ch 682, 1986 McKinney's Session Laws of NY, at 3184; *see generally Gasperini v Center for Humanities, Inc.*, 518 US 415, 423-425). Clearly, the "deviates materially" standard was designed to give the reviewing court greater authority to review jury awards and, "in design and operation, influence[ ] outcomes by tightening the range of tolerable awards" (*Gasperini v Center for Humanities, Inc., supra* at 425; *see also O'Connor v Graziosi*, 131 AD2d 553, *lv denied* 70 NY2d 613; 12 Weinstein-Korn-Miller, NY Civ Prac ¶ 5501.21; Hoenig, Products Liability, *Recent Developments*, NYLJ, Aug. 25, 1988, at 3, col 1).

Bearing the foregoing principles and guidelines in mind, we note that plaintiff, at trial, established that at the time of the accident she was 43 years old, was gainfully employed, had numerous interests and hobbies, and enjoyed a healthy social and sexual relationship with her live-in companion of 10 years. Plaintiff, as a result of being struck by Officer Hardiman, initially was hospitalized for six days and the "primary initial diagnosis" upon her admission to the hospital indicated "base-of-skull fracture, subdural hematoma, occipital contusion."

It is also uncontroverted, due to defendants' utter failure to present any expert testimony or semblance of a defense as to damages, that plaintiff suffered multiple skull fractures, the complications from which continue to worsen, and that her injuries have had an enormous impact on her quality of life and left her with a grim prognosis for the future. Specifically, plaintiff furnished uncontradicted evidence that she suffers from the following conditions: brain damage with progressive tissue loss in her occipital lobes, temporal lobes, and both frontal lobes; memory loss, inability to focus and concentrate, inability to organize, inability to read anything complicated, inability to cope with stress, and inability to control anger or other emotions, all of which are permanent and progressive; and permanent and progressive brain atrophy and liquification.

Plaintiff also suffered traumatic damage to the left inner ear, causing continuing vertigo, a permanent inability to lie down, requiring her to sleep in a sitting-up position, and a permanent termination of sexual relationship; complete loss of olfactory sense and most of her sense of taste; herniated disc causing severe shoulder and neck pain and weakness in her dominant right arm; increasing anxiety and depression, which has led to the point where she discussed with one doctor suicide and the method she would use; post-traumatic stress fear of crossing streets; and "knife-like" headaches occurring three or four times a week. In addition, plaintiff suffers from sudden dizzy spells which have resulted in several accidents causing ankle and leg injuries; has trouble recognizing people's faces; cries with the slightest provocation; and has been unable to hold simple jobs for more than a few months.

Plaintiff has also had several seizures since the accident and her medical experts testified that it is likely she will suffer additional seizures in the future. Moreover, plaintiff's current condition qualifies as demented due to her loss of memory, poor abstract thinking and inability to perform thought-control functions, and her experts concurred, at trial, that plaintiff has

a proven, established risk of continuing to deteriorate into Parkinson's and/or Alzheimer's disease.

In order for us to determine whether the award in this matter "deviates materially from what would be reasonable compensation," we must look to awards approved in similar cases (*Gasperini v Center for Humanities, Inc.*, *supra* at 425; *Donlon v City of New York*, *supra* at 15; *Leon v J & M Peppe Realty Corp.*, 190 AD2d 400, 416), bearing in mind that personal injury awards, especially those for pain and suffering, are subjective opinions which are formulated without the availability, or guidance, of precise mathematical quantification (*see Valentine v Lopez*, 283 AD2d 739, 743; *Kahl v MHZ Operating Corp.*, 270 AD2d 623, 624). Moreover, upon appellate review, the trial court's decision must be accorded great weight, having had the advantage of observing the witnesses, or absence thereof, their demeanor on the witness stand and impact on the jury (*Santucci v Govel Welding*, 168 AD2d 845, 846; *Brian E. Weiss, D.D.S., P.C. v Miller*, 166 AD2d 283, *affd* 78 NY2d 979; 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.10).

The Court of Appeals, in *Caprara v Chrysler Corp.* (52 NY2d 114), appropriately summarized the task before us:

> "It goes without saying that [the] court, lacking clairvoyance, in evaluating a verdict intended to compensate for a projected long lifetime of pain, suffering, helplessness and all the other tangible and intangible losses that were sure to follow, faced an unusually difficult judgmental responsibility, for the fulfillment of which no less than a sophisticated elasticity will ever do. In no two cases are the quality and quantity of such damages identical. As has been pointed out by pragmatists and theorists who have wrestled with the problem of how damages in such cases may justly be arrived at, evaluation does not lend itself to neat mathematical calculation * * *" (*id.* at 126-127; *see also Bermeo v Atakent*, 241 AD2d 235, 239).

In this matter, taking into consideration all of the foregoing, we find that the jury's award for past and future pain and suffering does not deviate materially from what would be reasonable compensation, and, indeed, find the award completely justified considering the devastating injuries and deteriorating health and quality of life suffered by plaintiff. Accordingly, we decline to disturb the award (*see Flynn v General Motors Acceptance Corp.*, 179 Misc 2d 555, *appeal withdrawn* 270 AD2d

973; *see also Rappold v Snorac, Inc.* [appeal No. 7], 289 AD2d 1044, *lv dismissed* 98 NY2d 671; *Weldon v Beal*, 272 AD2d 321; *John v City of New York*, 235 AD2d 210).

■ We also find that the trial court properly precluded defense counsel from inquiring into plaintiff's medical insurance coverage. Plaintiff introduced evidence, through two doctors, that she would have benefitted from therapies focusing on pain management and cognitive rehabilitation, but that these therapies were not pursued because of financial problems. Plaintiff testified, over objection, that: "I would like to get physical therapy. I would like to see Dr. Knight on a more consistent basis. I cannot afford the fees and I cannot afford the time out from work."

Defense counsel, on cross-examination, inquired as to plaintiff's insurance coverage, to which the trial court sustained an objection, instructing the jury that "it's really not relevant." In its final charge to the jury, the trial court noted that "[t]here was some reference to insurance. Do not consider insurance. That is not an issue in this lawsuit."

Defendants, in their CPLR 4404 motion, argued that evidence concerning plaintiff's insurance coverage should have been admitted because it went to the core of both plaintiff's credibility and the extent of her damages. The trial court rejected defendants' posttrial argument, finding that the probative value "of this oblique use of insurance is far outweighed by its prejudicial effect * * *." We now find that the trial court properly exercised its discretion in precluding inquiry into plaintiff's medical insurance coverage, as its admission in this negligence action would clearly have been improper (*see Sobie v Katz Constr. Corp.*, 189 AD2d 49, 54; Prince, Richardson on Evidence § 4-614 [Farrell 11th ed]).

■ Defendants also argue that plaintiff's expert neurologists should not have been permitted to testify during trial that plaintiff's brain injuries placed her at risk for Alzheimer's disease, epilepsy, seizures and dementia since there was no mention of these future disabilities either in the medical expert reports which were exchanged prior to trial, or in plaintiff's bill of particulars. Defendants maintain that they were prejudiced by the delayed disclosure and cannot be faulted for failing to produce an expert witness to rebut information presented by plaintiff for the first time on direct examination, and defendants' ability to effectively cross-examine these experts about previously undisclosed future disabilities was impeded.

We find, however, that defendants' claims of surprise ring hollow as defendants were clearly on notice that plaintiff was

claiming a serious, degenerative brain injury, and, by their own admission, had retained "an eminent, board-certified neurologist who was consulted * * * on several occasions before trial," but who they neglected, for unarticulated but seemingly obvious reasons, to call at trial. Indeed, defendants did not deem it necessary to so much as ask for an adjournment to consult with their expert after plaintiff's experts testified on direct. Absent prejudice or surprise to defendants, that branch of the trial court's decision granting plaintiff's cross motion pursuant to CPLR 3025 (c) to conform her pleadings to the proof adduced at trial constituted, in our view, a proper act of discretion (see *Alomia v New York City Tr. Auth.*, 292 AD2d 403, 406; *Sylvan Lawrence Co. v 180 Realty Co.*, 268 AD2d 238).

Defendants maintain that the jury award of $180,000 for future physical therapy lacks evidentiary foundation. A review of the record, however, reveals that the jury could have reasonably concluded, based on Dr. Stiler's and Dr. Block's testimony, and the absence of any testimony whatsoever to the contrary, that plaintiff would require such therapy for the rest of her life on an as-needed basis. The jury's calculation, based on the evidence, could be sustained as follows: two courses of physical therapy for eight weeks, twice a year ($3,200 per year), plus pain management therapy three times per year ($3,000) for the rest of her life, at a cost of $186,000. We therefore, decline to reduce this award.

Plaintiff's expert economic witness, Dr. Seymour Barcun, calculated the cumulative value of the loss of household services for a typical woman of plaintiff's age, from the time of the accident to the trial date, to be $88,778. Correspondingly, assuming plaintiff had performed household services for an additional 20 years (until age 70), the total value of her loss of such services would be $439,267. Although Dr. Barcun did not know what proportion to deduct, if any, for services which plaintiff might still be capable of providing, no evidence was provided adverse to Dr. Barcun's testimony. The jury subsequently awarded plaintiff $10,000 for the loss of past household services and $250,000 for loss of future household services.

Defendants, in their motion to set aside the verdict, raised no specific claim regarding household services, and none of the arguments defendants now raise on appeal provide a basis to set aside that aspect of the verdict. We note that the award was far less than Dr. Barcun's calculations indicated it should be, even though plaintiff and her live-in companion offered un-

rebutted testimony that plaintiff could no longer perform household chores. Moreover, nothing in evidence supports defendants' contention that her live-in companion now performs the household services that plaintiff is no longer capable of and, significantly, plaintiff and her live-in companion are not married and, thus, there is no legal basis on which to assume that plaintiff will continue to have a partner to perform those services.

Finally, we disagree with defendants' argument that a new trial is warranted on the ground that plaintiff's counsel exceeded the bounds of permissible argument in summation. Although plaintiff's counsel twice argued that plaintiff would be susceptible to "early Alzheimer's, dementia, *cerebral palsy*, epilepsy" (emphasis added) and while it appears that there was no medical testimony to support the contention that plaintiff is at risk for cerebral palsy, we find such error harmless in view of the overwhelming, uncontroverted medical testimony concerning plaintiff's devastating injuries and deteriorating health. Defendants' remaining arguments go to the issue of liability (i.e., the speed of the scooter), which are not relevant to this appeal. Defendants also failed to establish an evidentiary foundation for a charge on mitigation of damages.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Paula Omansky, J.), entered February 14, 2001, after a jury trial, awarding plaintiff $5,795,015 in total damages, and, bringing up for review, an order of the same court and Justice, entered on or about September 26, 2000, which, to the extent challenged as limited by the briefs, denied defendants' motion pursuant to CPLR 4404 to reduce the jury's award or direct a new trial, and granted plaintiff's cross motion, pursuant to CPLR 3025 (c), to conform her pleadings to the proof adduced at trial, should be affirmed, without costs.

MAZZARELLI, SAXE and MARLOW, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered February 14, 2001, affirmed, without costs.