OPINION OF THE COURT
Joseph D. McGuire, J.
Counsel for defendant has applied to the court for an order setting aside the jury verdict in this malpractice case that found liability and awarded damages to the infant plaintiff (CPLR 4404 [a]).
The action herein is one for medical malpractice that resulted in injury to the infant plaintiff, Kyla Harding. After several days of testimony, the jury returned a verdict finding defendant Adedayo Onibokun negligent; finding that the negligence was a substantial factor in causing plaintiff Kyla Harding’s injuries; and awarding damages. The damages for pain and suffering, including loss of enjoyment of life, from August 3, 2003 to the date of the verdict were awarded in the amount of $150,000. Pain and suffering including loss of enjoyment of life and for the permanent effect of the injury, over 76 years in the future, were awarded in the amount of $5,000,000. The child was born August 3, 2003, and on the date of the verdict, September 22, 2006, was three years old.
Defendant argues that the award of damages is excessive, that it could not have been based upon a rational interpretation of the evidence, and, because of the large amount awarded, defendant says this is an indication that the verdict on liability must have been the result of passion, prejudice or a misconception of the proof in some regard. Defendant argues that the jury must have ignored the proof presented, and that the jury determination on liability was overwhelmed by the sympathetic nature of the case presented.
*792 Plaintiff contends that the evidence well supported the finding of liability, including the testimony of an expert witness. Plaintiff also contends that the damages found by the jury were supported by the proof and within the range of other verdicts and settlements for similar injuries.
The discretion exercised by a court in setting aside a jury verdict must be done cautiously (Nicastro v Park, 113 AD2d 129, 133 [1985]). To the extent that defendant claims the verdict was the result of an overly sympathetic view of the case and ignorance of the proof by the jury, it appears he is arguing it was contrary to the weight of the evidence. Such a motion “should not be granted unless the preponderance of the evidence in favor of the moving party is so great that the verdict could not have been reached upon any fair interpretation of the evidence” (Dannick v County of Onondaga, 191 AD2d 963, 964 [1993]; see Osinski v Taefi, 13 AD3d 1205 [2004]). A verdict should be set aside if it is “palpably irrational or wrong” (Dannick, 191 AD2d 963, 964 [1993]; see also Diglio v Gray Dorchester Assoc., 255 AD2d 911 [4th Dept 1998]). “The operative factor ... is a finding that the jury could not have reached its verdict on any fair interpretation of the evidence” (American Linen Supply Co. v M.W.S. Enters., 6 AD3d 1079, 1080 [2004]). The court is required to
“cautiously balance ‘the great deference to be accorded to the jury’s conclusion . . . against the court’s own obligation to assure that the verdict is fair’ . . . and the court may not employ its discretion simply because it disagrees with a verdict, as this would ‘unnecessarily interfere with the fact-finding function of the jury to a degree that amounts to an usurpation of the jury’s duty’ ” (McDermott v Coffee Beanery, Ltd., 9 AD3d 195, 206 [2004] [citations omitted]; see also Ruddock v Happell, 307 AD2d 719 [4th Dept 2003]).
“A jury verdict should not be set aside as against the weight of evidence unless it is palpably wrong and there is no fair interpretation of the evidence to support the jury’s conclusion or the verdict is not one reasonable persons could have rendered after receiving conflicting evidence” (Riggio v New Creation Fellowship of Buffalo, 249 AD2d 942, 942 [1998]). “Where both sides present expert testimony in support of their respective positions, it is for the jury to decide which expert’s testimony is more credible” (Texter v Middletown Dialysis Ctr., Inc., 22 AD3d 831, 832 [2005] [citations omitted]; see also Stewart v Olean *793 Med. Group, P.C., 17 AD3d 1094 [2005]; Speciale v Achari, 29 AD3d 674 [2006]; Harris v Parwez, 13 AD3d 675 [2004]).
The sole claimed basis by defendants to set aside the liability finding is the speculation that the jurors were swayed by sympathy to such an extent that they disregarded the law given to them by the court. Such speculation is not sufficient to justify setting aside the liability portion of the verdict. Were that the rule, every seemingly large verdict would be subject to attack with no adequate foundation. Speculation and surmise are simply insufficient bases for establishing a weight of evidence argument. There is absolutely no proof the jurors did not hear the charge to them on the law; the courtroom demeanor of these jurors, their eye contact when portions of law was read to them, and their rapt attention during all the testimony presented convince this court that they were not improperly swayed in making their liability finding. There were different expert opinions presented, and it is the jury’s function to resolve those differences, which they did with a reasonable factual basis. It cannot be said their finding was palpably wrong or that it was unreasonable. There was sufficient evidence presented at trial to support the liability verdict.
The motion to set aside the liability finding must be denied.
With respect to damages, if such an award deviates materially from what would be reasonable compensation (CPLR 5501 [c]), a trial court may order a new trial limited to the damages only (CPLR 4404 [a]; see Inya v Ide Hyundai, Inc., 209 AD2d 1015 [4th Dept 1994]). The trial court uses the same material deviation rule as an appellate court in reviewing damage verdicts (CPLR 5501 [c]; Inya, 209 AD2d 1015 [1994]). It is no longer necessary for a moving party to prove to the court that the damage award “shocks the conscience,” either in terms of adequacy or inadequacy. The current standard of “material deviation from reasonableness” provides courts with more flexibility in the analysis of damage verdicts, supposedly to comport with a legislative desire to curb insurance rates (see Consorti v Armstrong World Indus., Inc., 72 F3d 1003, 1013 [1995]; Gasperini v Center for Humanities, Inc., 518 US 415 [1996]; Keenan v Waldorf Carting Co., 2004 WL 1961592, 2004 US Dist LEXIS 17695 [SD NY 2004]; Prunty v YMCA of Lockport, 206 AD2d 911 [1994]).
“While the law seeks by reasonable compensation to make a plaintiff whole, we must recognize that compensation for suffering can be accomplished only *794 in a symbolic and arbitrary fashion. There are at least two serious shortcomings to the endeavor. First, money awards do not make one whole; they do not alleviate pain. Second, there is no rational scale that justifies the award of any particular amount, as opposed to some very different amount, in compensation for a particular quantum of pain” (Consorti v Armstrong World Indus., Inc., 64 F3d 781, 788 [1995]).
“Because personal injury awards, especially those for pain and suffering, are not subject to precise quantification . . . [courts] look to comparable cases to determine at what point an award ‘deviates materially’ from what is considered reasonable compensation” (Karney v Arnot-Ogden Mem. Hosp., 251 AD2d 780, 782 [1998], lv dismissed 92 NY2d 942 [1998]; Rappold v Snorac, Inc., 289 AD2d 1044 [4th Dept 2001]). The amount of damages to be awarded to a successful plaintiff for injuries is a question for the jury, and its findings should not be disturbed “unless the award deviates materially from what is reasonable compensation” (Ramos v Ramos, 234 AD2d 439, 440 [1996]).
Looking to only comparable awards that have received appellate review, however, as argued by defendant, is not the preferred procedure, although it has received favorable commentary in at least one Appellate Division Department (see Donlon v City of New York, 284 AD2d 13 [1st Dept 2001]; see also Allen v Amzoski, 2 Misc 3d 1001[A], 2004 NY Slip Op 50071[U] [2004]). Nonetheless,
“Modification of damages, which is a speculative endeavor, cannot be based upon case precedent alone, because comparison of injuries in different cases is virtually impossible . . . Comparison of cases is an even more tenuous endeavor for an appellate court because we are constrained to rely on what are often scant summary factual recitations in prior decisions” (Donlon, 284 AD2d 13, 21 [2001] [Mazzarelli, J., dissenting] [internal quotation marks omitted]; see also Po Yee So v Wing Tat Realty, 259 AD2d 373 [1st Dept 1999]).
This court concurs with the statement by Justice Saxe (also in dissent),
“I disagree with the majority’s assertion that only judicial rulings reviewing jury awards are of any relevance in determining what is fair and reasonable compensation. This declaration of the complete *795 irrelevance of jury awards is unnecessarily extreme. The voice of a jury is the voice of the community, and it should not be so cavalierly ignored when deciding whether an award deviates materially from what would be reasonable compensation” (Paek v City of New York, 28 AD3d 207, 211 [2006] [Saxe, J., dissenting]; see also Weigl v Quincy Specialties Co., 190 Misc 2d 1 [2001]).
In another department, the preferred view has held that
“[r]eview of the adequacy of a damage award entails its comparison to awards in similar cases as well as consideration of various factors, including the life-threatening nature of the injuries, the length of hospitalization, surgeries required, complications experienced, medication needed to stabilize the patient and relieve pain, postconfinement convalescence, rehabilitative efforts and the success of treatment” (Edwards v Stamford Healthcare Socy., 267 AD2d 825, 827 [3d Dept 1999] [citations omitted]).
A verdict will be changed in those cases when it “materially deviates from what would be reasonable compensation with reference to both the objective criteria by which such damages are assessed and in comparison to what has been determined to be reasonable compensation in cases involving comparable injuries” (Edwards, 267 AD2d 825, 828 [1999]; see also Stedman v Bouillon, 234 AD2d 876 [1996]; Osiecki v Olympic Regional Dev. Auth., 256 AD2d 998 [1998]).
The fact that jury verdicts for comparable injuries may not have received appellate review does not alone negate the importance of such findings, nor does the absence of court review of a settlement with a comparable injury. In evaluating material deviation and reasonableness, and in exercising discretion, the target is a moving one, not one always constrained by historical beliefs as to the value of money or the fluctuating concepts of the impact of pain and suffering. Since money alone is the civil system’s method of compensating injured parties, it of necessity must find a built-in factor for inflation or deflation, as the case may be. We are not at the point in our civil system where particular injuries are numerically evaluated legislatively as in workers’ compensation awards.
Having set forth the court’s view on nonappellate verdicts, the court is constrained to also state that such unreviewed verdicts, and settlements, while helpful to a trial court, do not have the same weight as a verdict that has received appellate *796 imprimatur. They, however, should not be ignored, and should be considered in the totality of the circumstances presented to the trial court. In fact, there are factors not appearing in a trial record that may also impact the ultimate finding by a reviewing trial judge, such as the mannerisms of witnesses, and the way arguments are presented to the jury, as well as their content. The printed word does not reveal all aspects of a trial and the judge present can use her or his observations as a factor in deciding reasonableness. There is a need for “sophisticated elasticity . . . [since] evaluation does not lend itself to neat mathematical calculation” (Caprara v Chrysler Corp., 52 NY2d 114, 127 [1981]).
Defendants’ counsel argues that the $150,000 the jury found as the value of past pain and suffering is excessive because there was no proof offered that the infant’s condition was painful, and that dividing the total by three years of the child’s life results in “an arbitrary figure unsupported by the proof.” There is an admission that the child did have to undergo physical therapy, occupational therapy, and two surgical procedures. There also was proof, as pointed out by plaintiffs counsel, that the surgical procedures were “major,” that there was scarring in the area of the shoulder injury and on her leg, and that the child wears a splint and undergoes electrical stimulation at night. Comparable cases do not necessarily break down pain and suffering between past and future elements (see, e.g. Sutherland v County of Nassau, 151 AD2d 468 [1989]), but the amount found here by the jury for this part of their award clearly does not materially deviate from what a reasoned finding would be for the pain endured in the first three years of this child’s life, to say nothing of the suffering aspect she was unable to articulate because of her tender years.
Comparable cases for similar injuries have been persuasively presented by both counsel. The court has considered high-end amounts for similar injured infants exceeding $6,000,000, and low-end amounts cited by defense counsel of $250,000. The court has considered an inflationary factor in viewing some reported cases from more than 10 years ago to convert such cases to a realistic present day value.
Many of the comparable cases have factual differences with the extent of pain and suffering, including permanency and loss of enjoyment of life, that this child will be facing. No two cases are identical, and even if they were factually the same, there could be a different jury or appellate court finding that could *797 still be sustained as being within the parameters of reasonableness.
The Miller v Weisel case (15 AD3d 458 [2005]) provided no reasons for the change in the awarded damages. The Charles v Day case (289 AD2d 190 [2001]) involved a mild form of Erb’s palsy with a plaintiff still able to perform daily tasks with little or no difficulty. Reid v County of Nassau (215 AD2d 466 [1995]) and Velez v Empire Med. Group (201 AD2d 640 [1994]) both failed to comment on the lowering of the pain and suffering aspect of the verdicts, but they did comment on the lost future earnings part of the verdict as too speculative. In Sutherland v County of Nassau (190 AD2d 664 [1993]) the second trial of the case probably sets forth the lowest range of an award for this type injury, but the case is dated 1993, with a verdict likely rendered well before the appellate decision.
In short, cases cited by defendant here at most persuade the court that the low end of the spectrum for an Erb’s palsy injury, taking into account inflation factors since 1993, is likely in the area of $1,150,000.
Cases cited by plaintiff have a common thread in that none of them were pointed out as having received appellate review, although defense counsel correctly comments on the Reid case as being erroneously listed by plaintiffs counsel. There is also a common thread in the cases after year 2000 in Burch, Ajayi, Segovia, and Nedd, that is, all had the benefit of Dr. Adler as a witness for plaintiff, as he was in the present case. There is a consistency in plaintiffs and defendant’s case citations in that the juries have continually found larger damages than appellate courts, and the settlements reported are also higher.
A review of the factual detail of plaintiffs reported verdicts after 2000 shows a range of $6,000,000 for future pain and suffering for an 11 year old (Burch); $5,000,000 for future pain and suffering for a four year old with a determined life expectancy of 30 years (Ajayi); $2,737,500 for future pain and suffering for a 15 year old (Segovia); $2,700,000 for future pain and suffering for a four year old (Hansen); $2,000,000 for a three year old for future pain and suffering {Nedd); $1,500,000 for future pain and suffering for a six year old (McGriff); and $1,500,000 for future pain and suffering for a five year old (Thomas). The Reid jury opinion of $2,000,000 for future pain and suffering for a 12 year old was lowered on appeal to $300,000 without explanation.
*798 Cases cited by plaintiff here persuade the court that the high end of the spectrum for an Erb’s palsy injury, for future damages, taking into account expected years of loss of enjoyment of life in the various fact patterns, is likely in the area of $4,000,000. A finding lower than $1,150,000 and higher than $4,000,000 the court finds would be a deviation that is material.
At the end of the analysis, the court is still confronted by a difficult task in terms of comparing consistent jury beliefs with inconsistent court response to jury findings with similar injuries. The dynamic of a trial can result in considerable variation; geography of the jury pool is said to play a role also. Having considered the comparable cases as one part of the analysis, and having applied the due deference to which jury findings are entitled, the court concludes that the future pain and suffering finding materially deviates from what is reasonable in this case. The court has disregarded defense counsel’s argument regarding amounts mentioned during settlement discussions, such an argument being deemed highly improper on this or any similar type motion (CPLR 4547).
The court finds the 76 years of loss of enjoyment of life and future pain and suffering for the Erb’s palsy injury for this three-year-old female plaintiff should not exceed $2,950,000.
Defendant’s motion is granted in part and denied in part. The motion to set aside the liability finding is denied. The motion to set aside the past pain and suffering award of $150,000 is denied. The award for past pain and suffering shall remain unchanged.
The motion to set aside the future pain and suffering award is granted, and a new trial is directed on those damages only unless plaintiff executes a written stipulation and files same in the Office of the Clerk of Jefferson County decreasing the verdict from $5,000,000 to $2,950,000 for future pain and suffering within 2C days of service of a copy of this decision and order of the court determining this motion.
The court erroneously directed both parties to execute the stipulation in the original decision/order of December 15, 2006. This amended finding is based on review of other cases where verdicts were set aside and new trials directed, which cases consistently hold that the injured party is the proper one to execute the stipulation, not both parties (see Zukowski v Gokhberg, 31 AD3d 633 [2006]; Bryan v Staten Is. Univ. Hosp., 29 AD3d 842 *799 [2006]; Arevalo v New York City Tr. Auth., 15 AD3d 512 [2005]; McNeil v MCST Preferred Transp. Co., 301 AD2d 579 [2003]; Santiago v New York City Health & Hosps. Corp., 278 AD2d 220 [2000]; Tri-State Aluminum Prods. v Paramount Macaroni Mfg. Co., 247 AD2d 606 [1998]). All other aspects of the original decision/order of December 15, 2006 not herein modified shall remain the same.