**09-0146-cv**
House v. Kent Worldwide

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: (SUMMARY ORDER). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of January, two thousand ten.

PRESENT: ROBERT D. SACK,
   RICHARD C. WESLEY,
     *Circuit Judges,*
   JOHN F. KEENAN,
     *District Judge.*[*]

_____

Walter House and Debra House,

_____

[*]The Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

*Plaintiff-Third-Party-Plaintiff-Appellants,*

v.                                         09-0146-cv

Kent Worldwide Machine Works, Inc., Kent Worldwide Machine Works, Worldwide Processing of Ohio, Inc., Worldwide Process Technologies, Worldwide Converting Co. and Worldwide Converting Machinery,

*Defendant-Third-Party-Defendant-Appellees.*

_____

APPEARING FOR PLAINTIFFS-APPELLANTS:    MICHAEL H. ZHU
                                        (Brian J. Isaac,
                                        *on the brief*)
                                        Pollack, Pollack,
                                        Isaac & De Cicco,
                                        New York, NY

APPEARING FOR DEFENDANTS-APPELLEES:     NONE


Appeal from the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **VACATED and REMANDED**:

Appellants Walter House and Debra House (the "Houses") appeal from an order of the United States District Court for the Southern District of New York (Berman, *J.*) denying their objections to the Report and Recommendation of Magistrate Judge Kevin Nathaniel Fox awarding only damages for past lost earnings and declining to award damages for past and future pain and suffering, loss of consortium, past and future medical expenses, future lost earnings, and

2

attorneys' fees.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Because Kent Worldwide defaulted, the Houses' pleaded allegations are accepted as true, except those related to damages, and the Houses are entitled to all reasonable inferences from the evidence they presented.  *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, damages in a default judgment may be determined by the court through a hearing.  FED. R. CIV. P. 55(b)(2).  We have previously held that a hearing is not necessary when the district court relies "upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record" to calculate a damage award.  *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).  Even in the absence of a hearing, however, the district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty.  *Transatlantic Marine Claims Agency, Inc. v. Ace*

*Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Magistrate judges and district courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence. *See, e.g., Cesario v. BNI Construction, Inc.*, No. 07 Civ. 8545, 2008 WL 5210209, at *2 (S.D.N.Y. Dec. 15, 2008); *Ermenegildo Zenga Corp. v. 56ᵗʰ Street Menswear, Inc.*, No. 06 Civ. 7827, 2008 WL 4449533, at *3 (S.D.N.Y. Oct. 2, 2008); *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003).

The Federal Rules of Evidence require that documents be authenticated before they can be admitted into evidence. FED. R. EVID. 901(a). The failure of counsel to adhere to this simple directive to provide affidavits asserting that the documents were what they purported to be is inexcusable. However, the evidence that was authenticated was sufficient to justify damages in this case.

*Gissinger v. Yung* is informative on this point. Nos. CV-04-0534, CV-04-5406, 2007 WL 2228153, at *1 (E.D.N.Y. July 31, 2007). In *Gissinger*, the magistrate judge held an inquest for damages in a personal injury case. *Id.* The magistrate judge, faced with a "haphazardly assembled

4

compendium" of medical documents, declined to consider the records that were not authenticated. *Id*. at *5. He did, however, consider the affidavit of one of plaintiff's physicians as sufficient to authenticate at least the records kept by that physician's office. *Id*. at *4. Using only those authenticated records and the affidavits of the plaintiff and his physician, the magistrate judge looked to New York law for comparable awards and ultimately granted past and future pain and suffering damages. *Id*. at *6-8.

In the case before us, however, the magistrate judge and the district court seemed to determine sufficiency of the evidence with regard to damages by comparing that evidence that might have been relevant but was inadmissible because of the failure to authenticate with the evidence that was admissible. The sufficiency of the evidence is not based on its quantity in comparison to evidence rendered inadmissible by attorney error but rather an assessment of its quality and relevance to the issue at hand. The evidence available in this case was sufficient as a matter of law to allow the magistrate judge to make an award of damages.

Dr. Asprinio's affidavit detailed Walter House's

5

harrowing medical odyssey.  The day of the accident, Walter presented to the hospital with injuries including "a near amputation of both lower extremities; bilateral open fractures of the tibia and fibula; a dislocated left knee; head trauma...abrasions to the left lateral ribs; mid abdominal tenderness and distention; [and] an abrasion over [his vertebrae]."  As Dr. Asprinio affirmed, Walter went through numerous medical procedures, including removal of his spleen and pancreas, blood transfusions, insertion of a catheter and a nasogastric tube, skin grafts, and irrigations.  He endured multiple surgeries over months of hospitalization.  Eventually, after a "foul odor" emanating from Walter's cast portended an infection, he "underwent a below the knee amputation."

In his affidavit, Walter House affirmed Dr. Asprinio's account.  Walter reported he had "at least 17 major surgeries and more than 20 other invasive and non-invasive procedures that...included a below the knee amputation of the left leg and multiple surgeries to [the] right leg."  He had his spleen and part of his pancreas removed and developed diabetes.  He now suffers "constant pain to both legs" and is "self conscious about his injuries."  Since the

accident, Walter has "experienced anxiety, sleep disturbance, feelings of depression, fatigue, become short tempered...[and] verbally abusive to family members." Relations between Walter and Debra "have diminished due to [their] alter[ed] roles and [his] lack of initiation." Walter affirmed that he can no longer work, and Debra must now care for the entire family.

Debra House's affidavit detailed her new role in the family as the head of the household, working "a full time outside job to supply the household with income" while also serving as the "caretaker of [her] husband and sons." Debra described Walter before the accident as "energetic, meticulous and motivated." Since the accident, Walter is "incapable of following through on simple household tasks and has sometimes become fatigued, irritable and verbally abusive" to the family. Their "social life has been affected due to his self consciousness about his injuries" and their "marriage has been affected due to altered roles and his lack of initiation."

For the magistrate judge and the district court to find such evidence insufficient to find damages for pain and suffering and loss of consortium was error. Loss of

7

consortium and pain and suffering damages attempt to compensate a nonpecuniary loss, through an accepted fiction that such damages will somehow provide solace to the injured. *McDougald v. Garber*, 73 N.Y.2d 246, 254 (N.Y. 1989). The amount for such damages "does not lend itself to neat mathematical calculation." *Caprara v. Chrysler*, 52 N.Y.2d 114, 127 (N.Y. 1981); see also *Oliveri v. Delta S.S. Lines, Inc.*, 849 F.2d 742, 749 (2d Cir. 1988).

Under New York law, loss of consortium is not a claim for only lost household services, but is instead a more intangible yet more significant injury to the partner who suffers the loss of the relationship as it existed before the injury. *See Zavaglia v. Sarah Neuman Center for Healthcare and Rehabilitation*, 883 N.Y.S.2d 889, 893 (N.Y. Sup. Ct. 2009). The affidavits in the record detail some of the changes in the House marriage and the stressors on Debra House since the accident. The information before the district court was similar to information found sufficient to support loss of consortium damage awards in New York courts. *See, e.g., DeLeonibus v. Scognamillo*, 656 N.Y.S.2d 275, 276 (2nd Dep't 1997); *see also Doviak v. Lowe's Home Centers, Inc.*, 880 N.Y.S.2d 766, 772 (3rd Dep't 2009).

8

There was also sufficient evidence to award damages for future pain and suffering. Future pain and suffering damages are calculated in part through reference to actuarial tables to determine the projected life span of the plaintiff. *See, e.g., Bermeo v. Atakent*, 241 A.D.2d 235, 239 (1st Dep't 1998). As part of their submissions in the damages phase, the Houses provided the National Vital Statistics Reports' "Life table for white males: United States, 2003," Vol. 54, No. 14, published on April 19, 2006, which the magistrate judge properly concluded was a self-authenticating document under Federal Rule of Evidence 901. The magistrate judge, however, rejected this evidence as unreliable because there existed an updated version of the life expectancy tables showing data for 2004 that was published on December 28, 2007, which the magistrate judge contended was "available at the time of the plaintiffs' [July 2, 2008] application." But at the time of their July 2, 2008 application, the plaintiffs simply resubmitted the original application they had presented to the district court on December 26, 2007, two days before the revised tables were published.

Whether the plaintiffs knew or should have known of the

9

existence of the updated tables, it is unreasonable to conclude that the estimated life expectancy for healthy white males under age 40 in the United States would change so materially between 2006 and 2007 that the 2006 tables could provide no credible basis on which to estimate Walter House's remaining life expectancy. *See Earl v. Bouchard Transportation Co.*, 735 F. Supp. 1167, 1175-76 (E.D.N.Y. 1990), *aff'd in part, rev'd in part on other grounds*, 917 F.2d 1320 (2d Cir. 1990). Indeed, a review of the two tables reveals that the degree of difference between the 2006 and 2007 life expectancy estimates applicable to Walter House consisted of a negligible 0.3-0.4 *increase*. The 2006 tables should be used as a reasonable benchmark from which the district court can depart either upwardly or downwardly as it sees fit to account for any perceived statistical outdatedness and with a view toward the general increasing life expectancy in the United States. *See Espana v. United States*, 616 F.2d 41, 44 (2d Cir. 1980). In short, there was sufficient evidence in the record for the district court to calculate future pain and suffering damages.

While future pain and suffering depends on actuarial tables, past pain and suffering does not. *See, e.g., Reed*

10

*v. City of New York*, 757 N.Y.S.2d 244, 247-49 (1st Dep't 2003). The magistrate judge seemed to think Walter's medical expenses were a necessary predicate for the pain and suffering award but New York courts have awarded past pain and suffering damages based on the medical procedures endured and nature of the injury suffered. *See, e.g., Bondi v. Bambrick*, 764 N.Y.S.2d 674, 675 (1st Dep't 2003); *Hixson v. Cotton-Hanlon, Inc.,* 875 N.Y.S.2d 361, 362 (4th Dep't 2009); *Nunez v. Levy*, 862 N.Y.S.2d 816, 816 (N.Y. Sup. Ct. 2008). The affidavit of Dr. David Asprinio, plus Walter House's affidavit, were sufficient to support past pain and suffering damages.

For the foregoing reasons, the order of the district court is VACATED and we REMAND for proceedings not inconsistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk

By:_____