# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**278**
**CA 10-00367**
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

DANIEL C. OAKES AND LISA M. OAKES,
PLAINTIFFS-RESPONDENTS,

V                                                MEMORANDUM AND ORDER

RAJNIKANT PATEL, M.D., SATISH K. MONGIA, M.D.,
AND KALEIDA HEALTH, AS SUCCESSOR IN INTEREST
TO MILLARD FILLMORE HOSPITALS, DOING BUSINESS
AS MILLARD FILLMORE SUBURBAN HOSPITAL,
DEFENDANTS-APPELLANTS.

---

DAMON MOREY LLP, BUFFALO (AMY ARCHER FLAHERTY OF COUNSEL), FOR
DEFENDANT-APPELLANT KALEIDA HEALTH, AS SUCCESSOR IN INTEREST TO
MILLARD FILLMORE HOSPITALS, DOING BUSINESS AS MILLARD FILLMORE
SUBURBAN HOSPITAL.

ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (GREGORY T. MILLER OF
COUNSEL), FOR DEFENDANT-APPELLANT SATISH K. MONGIA, M.D.

BROWN & TARANTINO, LLC, BUFFALO (ANN M. CAMPBELL OF COUNSEL), FOR
DEFENDANT-APPELLANT RAJNIKANT PATEL, M.D.

LAW OFFICE OF FRANCIS M. LETRO, BUFFALO (RONALD J. WRIGHT OF COUNSEL),
FOR PLAINTIFFS-RESPONDENTS.

---

Appeals from a judgment of the Supreme Court, Erie County
(Timothy J. Drury, J.), entered December 23, 2009 in a medical
malpractice action. The judgment awarded plaintiffs money damages
upon a jury verdict.

It is hereby ORDERED that the judgment so appealed from is
affirmed without costs.

Memorandum: Plaintiffs commenced this medical malpractice action
seeking damages for the failure of defendants to diagnose and treat
Daniel C. Oakes (plaintiff) for a sentinel bleed from a cerebral
aneurysm. Following the first trial, the jury returned a verdict
finding, inter alia, that defendants, Rajnikant Patel, M.D., Satish K.
Mongia, M.D., and Kaleida Health, as successor in interest to Millard
Fillmore Hospitals, doing business as Millard Fillmore Suburban
Hospital (Kaleida), were negligent and also that Kaleida was
vicariously liable for the negligence of third-party defendant Dent
Neurologic Institute (Dent). The jury apportioned fault among
defendants and awarded plaintiffs damages in various amounts

including, insofar as relevant to this appeal, $1 million to plaintiff for past pain and suffering and $60,000 to plaintiff wife for past loss of services, as well as future damages covering 18 years in the amount of $1 million for plaintiff's future pain and suffering, $1.8 million for plaintiff's future supportive living expenses and $150,000 for plaintiff wife's future loss of services.

Plaintiffs moved to set aside the verdict on damages only based on, inter alia, the ground that certain elements of the award were inadequate.  Supreme Court, inter alia, granted the post-trial motion in part and set aside the verdict with respect to damages for past and future pain and suffering, past and future loss of services and future supportive living expenses, and the court ordered a new trial on those elements of damages unless defendants stipulated to an award of $5 million for past pain and suffering and $1.5 million for past loss of services, as well as an award covering 18 years in the amount of $5 million for future pain and suffering, $2 million for future loss of services and $3.9 million for future supportive living expenses.

Also following the jury verdict, Kaleida moved for, inter alia, leave to amend its answer to the amended complaint to include an affirmative defense of release and an affirmative defense pursuant to General Obligations Law § 15-108.  According to Kaleida, plaintiffs each executed and filed a proof of claim in a liquidation proceeding in March 2003 against Kaleida's insurer, PHICO Insurance Company (PHICO), that included a release of claims against any PHICO insured.  Kaleida filed its own proof of claim in that proceeding in December 2007 with respect to this action against it and, although the deadline to file proofs of claim in the liquidation proceeding was April 1, 2003, Kaleida averred that it had been advised by PHICO that its proof of claim was timely.  Kaleida alleged that it did not receive copies of plaintiffs' proofs of claim until May 2008, after the conclusion of the first trial, and that the proposed amendments to its answer would not prejudice plaintiffs.  The court denied the motion.

Defendants subsequently refused to stipulate to the court's increased damages, and a new trial on the issue of those damages was conducted.  Following the second trial, the jury returned a verdict awarding plaintiff $5.6 million for past pain and suffering and awarding plaintiff wife $1.5 million for past loss of services and society.  The jury also awarded future damages covering 17 years in the amount of $4,720,000 for plaintiff's future custodial care and supportive services, $4 million for plaintiff's future pain and suffering, and $150,000 for plaintiff wife's future loss of household services and $750,000 for her future loss of services and society.  Defendants thereafter each moved, inter alia, to set aside the verdict on the ground that the award for past and future pain and suffering, past and future loss of services and society and future custodial home care was excessive.  Kaleida and Dr. Mongia also contended that they had been prejudiced when the court erred in admitting certain evidence and precluding other evidence, and when plaintiffs' counsel and the court engaged in inappropriate conduct.  The court denied those parts of defendants' respective motions to set aside the verdict, and this appeal ensued.

We conclude that the court properly denied that part of Kaleida's motion for leave to amend its answer to the amended complaint to include an affirmative defense of release and an affirmative defense pursuant to General Obligations Law § 15-108. The proofs of claim executed and filed by plaintiffs in the liquidation proceeding with respect to PHICO contained releases with respect to "any and all claims [that] have been or could be made against [a] PHICO insured based on or arising out of the facts supporting the . . . [p]roof of [c]laim up to the amount of the applicable policy limits and subject to coverage being accepted by the Liquidator . . . ." Further, the notice received by plaintiffs in connection with their proofs of claim states that, "[i]f coverage is avoided by the Liquidator, [the] release[s] become[] null and void." Because Kaleida's liability for the negligence of Dent is included in the claims specified to PHICO and because PHICO's liquidators avoided, or announced that they would avoid, coverage of that portion of the claim, plaintiffs' releases were rendered null and void.

We further conclude that defendants were not denied a fair trial based on the alleged inappropriate conduct of plaintiffs' counsel or the court. Any improper remarks by plaintiffs' counsel did not deny defendants a fair trial because " 'they did not constitute a pattern of behavior designed to divert the attention of the jurors from the issues at hand' " (*Kmiotek v Chaba*, 60 AD3d 1295, 1296). Furthermore, although certain actions and statements of the court may have been somewhat intemperate or ill-advised, we conclude that, "overall[,] the conduct complained of was not so egregious as to have deprived the [defendants] of a fair trial" (*Malaty v North Ark. Wholesale Co.*, 305 AD2d 556; *see Sheinkerman v 3111 Ocean Parkway Assoc.*, 259 AD2d 480, *lv dismissed in part and denied in part* 93 NY2d 956).

We further conclude that the jury's verdict on liability in the first trial is not against the weight of the evidence (*see generally Cohen v Hallmark Cards, Inc.*, 45 NY2d 493, 499), and that the various elements of damages awarded in the second trial do not deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]).

Finally, we note our agreement with plaintiffs that the court properly granted those parts of their post-trial motion in the first trial to set aside certain elements of the award of damages as inadequate. With respect to the issue of the additur as raised by the dissent (Peradotto, J.), however, we conclude that, because defendants did not challenge the court's additur before, during or after the second trial, and did not raise that issue on appeal, no such issue is properly before us. Indeed, the only contentions raised by defendants on appeal in the "argument" sections of their briefs regarding damages are that the court erred in granting in part plaintiffs' motion to set aside the jury verdict in the first trial on the ground that certain portions of the damages award were inadequate, without addressing the amount of the court's additur with respect thereto, and that the court erred in denying those parts of their motions seeking to set aside the second verdict on the ground that certain portions of the damages award were excessive. We cannot conclude that, by challenging the

court's order setting aside the first verdict in part, defendants thereby implicitly challenged the amount of the court's additur (*see generally Gerbino v Tinseltown USA*, 13 AD3d 1068, 1072). Nor can we agree with our dissenting colleague that references to the amounts of the court's additur in the factual recitation of defendants' briefs on appeal constitute challenges to the court's additur. In any event, even assuming, arguendo, that such challenges are raised in the briefs, they are raised for the first time on appeal and thus are not properly before us (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 985). We have considered defendants' remaining contentions with respect to both trials and conclude that they are without merit.

LINDLEY, SCONIERS and MARTOCHE, JJ., concur; SMITH, J.P., dissents in part and votes to modify in accordance with the following Memorandum: I respectfully dissent in part, because I cannot agree with the majority that specified elements of the award of damages following the second trial are proper. Initially, I agree with the majority that the issue of the additur, which Justice Peradotto in her dissent asserts must be addressed before we review the excessiveness of the second verdict, is not before us. I also agree with the remainder of the majority's determination, including that, contrary to defendants' contention, Supreme Court properly granted those parts of plaintiffs' post-trial motion to set aside the verdict from the first trial with respect to damages for past and future pain and suffering, past and future loss of services and future supportive living expenses on the ground that the award for those elements of damages "deviates materially from what would be reasonable compensation" (CPLR 5501 [c]).

I agree with defendants, however, that the award after the second trial with respect to damages for past and future pain and suffering, past and future loss of services and future custodial care and supportive services also "deviates materially from what would be reasonable compensation" (*id.*). Although plaintiff Daniel C. Oakes sustained severe and life-changing injuries, in my view, an award of $2 million for past pain and suffering, $3.5 million for future pain and suffering, $200,000 for past loss of services, $300,000 for future loss of services, and $3 million for future custodial care and supportive services, with all future awards covering 17 years, is the maximum amount that the jury could have awarded as a matter of law based on the evidence at the second trial (*see generally Angamarca v New York City Partnership Hous. Dev. Fund, Inc.*, ___ AD3d ___ [June 21, 2011]; *Coque v Wildflower Estates Devs., Inc.*, 58 AD3d 44, 56; *Paek v City of New York*, 28 AD3d 207, 208, *lv denied* 8 NY3d 805; *Sawtelle v Southside Hosp.*, 305 AD2d 659, 660). Therefore, I would modify the judgment by vacating the award with respect to damages for past and future pain and suffering, past and future loss of services and future custodial care and supportive services and grant a new trial on those issues unless plaintiffs stipulate to a reduction of the verdict with respect to those elements of damages as indicated.

PERADOTTO, J., dissents and votes to modify in accordance with the following Memorandum: I respectfully dissent because, in my view, the majority's decision improperly fails to address the issue of whether

the court's additur after setting aside the first verdict was appropriate.  In my view, any issues concerning the excessiveness of the second verdict should not be addressed unless and until all issues relative to the first verdict are resolved.

As the majority states, plaintiffs commenced this medical malpractice action seeking damages for the failure of defendants to diagnose and treat Daniel C. Oakes (plaintiff) for a cerebral aneurysm.  Following the first trial, the jury found that defendants Rajnikant Patel, M.D., Satish K. Mongia, M.D. and Kaleida Health, as successor in interest to Millard Fillmore Hospitals, doing business as Millard Fillmore Suburban Hospital (Kaleida), were negligent and awarded damages in the amount of $5,123,500.  As relevant to this appeal, the jury awarded plaintiff $1 million for past pain and suffering, $1 million for future pain and suffering, and $1.8 million for future supportive living expenses, and awarded plaintiff wife $60,000 for past loss of services and $150,000 for future loss of services.  The future damages were awarded to cover a period of 18 years.  Plaintiffs moved to set aside the verdict on damages only based on, inter alia, the ground that certain parts of the award were inadequate.  The court determined that the award for past and future pain and suffering, past and future loss of services and future supportive living expenses deviated materially from what would be reasonable compensation.  The court therefore set aside the jury verdict with respect to those categories of damages and ordered a new trial unless defendants stipulated to increase the award to $5 million for past pain and suffering, $5 million for future pain and suffering, $1.5 million for past loss of services, $2 million for future loss of services, and $3.9 million for future supportive living costs, with all future damages awarded to cover a period of 18 years.  With that additur, the verdict would have been increased from $5,123,500 to $18,513,500.  Defendants rejected the additur and proceeded to a second trial.

On appeal, defendants contend that, inter alia, the court erred in setting aside certain parts of the verdict from the first trial. The order setting aside the first verdict and granting a new trial unless defendants stipulated to an additur of $13.4 million is, of course, brought up for review on this appeal from the judgment entered after the second trial (*see* CPLR 5501 [a] [1]).  The majority, however, does not address all of defendants' contentions with respect to the verdict after the first trial.  Instead, the majority proceeds directly to the claims concerning the verdict after the second trial, concluding that the damages awarded in the second trial are not excessive.  That is error.  Rather, we must address the propriety of the court's order setting aside parts of the verdict following the first trial and the appropriateness of the court's additur before addressing any issues raised with respect to the second trial (*see generally Sherry v North Colonie Cent. School Dist.*, 39 AD3d 986; *Zeigler v Neely*, 220 AD2d 345; *Libman v McKnight*, 204 AD2d 856, *lv denied* 84 NY2d 812).

In my view, the court properly set aside the award for past and future pain and suffering, past and future loss of services and future

supportive living expenses inasmuch as the award with respect to those categories of damages deviated materially from what would be reasonable compensation (*see* CPLR 4404 [a]).  I conclude, however, that the court's additur with respect to the noneconomic damages was excessive (*see generally Perlin v King*, 36 AD3d 495; *Rivera v Lincoln Ctr. for Performing Arts, Inc.*, 16 AD3d 274; *Carlos v W.H.P. 19*, 301 AD2d 423), inasmuch as the amounts set by the court did not represent "the minimum amount[s] that the jury could have found as a matter of law based on the evidence at trial" (*Camacho v Rochester City School Dist.*, 20 AD3d 916; *see Kmiotek v Chaba*, 60 AD3d 1295, 1297; *Orlikowski v Cornerstone Community Fed. Credit Union*, 55 AD3d 1245, 1247, *lv dismissed* 11 NY3d 915; *see generally* Siegel, NY Prac § 407, at 689 [4th ed]).  That is the applicable standard because "the amount of damages to be awarded is primarily a question of fact [and] . . . considerable deference should be accorded to the interpretation of the evidence by the jury" (*Marshall v Lomedico*, 292 AD2d 669, 670 [internal quotation marks omitted]).  Further, the successful litigants are "entitled to the benefits of a favorable jury verdict" (*Keyser v KB Toys, Inc.*, 82 AD3d 713, 714; *see McDonald v 450 W. Side Partners, LLC*, 70 AD3d 490, 491-492).  In the context of plaintiffs' motion to set aside the damages award as inadequate, it is the defendants who are entitled to that benefit.  In my view, $5 million each for past and future pain and suffering and $3.5 million total for past and future loss of services are simply not "the minimum amounts the jury could have awarded as a matter of law based on the evidence at trial" (*Kmiotek*, 60 AD3d at 1297; *see generally Doviak v Lowe's Home Ctrs., Inc.*, 63 AD3d 1348).  Defendants therefore were deprived of the opportunity to stipulate to an appropriate additur with respect to the award for past and future pain and suffering and past and future loss of services, and that error is not cured by a second trial on those categories of damages.  Indeed, this is not a case in which defendants made the strategic decision not to accept an appropriate additur and to proceed at their peril.  Thus, defendants should be afforded the opportunity to stipulate to a proper additur in the context of this appeal (*see generally Perlin*, 36 AD3d at 495; *Rivera*, 16 AD3d 274; *Carlos*, 301 AD2d 423).  I would therefore modify the judgment accordingly.

The majority concludes that the additur issue is not properly before us because defendants "did not challenge the court's additur before, during or after the second trial, and did not raise that issue on appeal."  I disagree.  In opposition to plaintiffs' motion to set aside the verdict on damages only after the first trial, defendants contended that the verdict should stand because the award did not deviate materially from what would be reasonable compensation.  That contention necessarily encompasses the argument that an additur in *any* amount would be inappropriate.  When the court granted plaintiffs' motion in part, set aside the verdict with respect to certain elements of damages and ordered a new trial on those elements unless defendants stipulated to an additur of more than $13 million, defendants rejected the proposed additur and proceeded to a second trial.  I cannot agree with the majority that, in addition to opposing plaintiffs' motion and rejecting the proposed additur, defendants were somehow required to further "challenge" the amount of the additur in order to preserve the

issue for our review.  Throughout their briefs on appeal, defendants assert not only that the court erred in setting aside the verdict after the first trial, but they also contend that the court's additur was excessive.  Kaleida, for example, states in its brief that it "declined to stipulate to the inordinate additur," noting that the court "ordered a five-fold increase in [plaintiff]'s award for pain and suffering, more than doubled [plaintiff]'s award for supportive living expenses, and increased [plaintiff wife]'s award for loss of consortium by a factor of more than 15."  Dr. Mongia similarly notes in his brief that "[t]he trial court's additur was more than four times the amount awarded by the jury as to the particular [elements] of damage[s] it felt to be inadequate."  I thus conclude that the issue whether the additur was excessive is properly preserved for our review.

I take no position with respect to the majority's determination that the various elements of damages awarded in the second trial do not deviate materially from what would be reasonable compensation because, in my view, that issue should not be reached until all issues with respect to the first trial have been resolved.  I also take no position with respect to defendants' contention that the court erred in precluding the admission of evidence relative to medical causation in the second trial, a contention that the majority does not address.

Entered:  August 19, 2011                    Patricia L. Morgan
                                             Clerk of the Court