[927 NYS2d 2]

JORGE ANGAMARCA, Respondent-Appellant, et al., Plaintiff, v
NEW YORK CITY PARTNERSHIP HOUSING DEVELOPMENT FUND,
INC., et al., Defendants, and JEFFERSON TOWNHOUSES, LLC,
Appellant-Respondent. (And Other Actions.)

First Department, June 21, 2011

**APPEARANCES OF COUNSEL**

*Duane Morris LLP*, New York City (*Thomas R. Newman* of counsel), and *Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, White Plains (*Phillip A. Tumbarello* and *Joseph McGovern* of counsel), for appellant-respondent.

*Pollack Pollack Isaac & De Cicco*, New York City (*Brian J. Isaac* of counsel), *Law Offices of Michelle S. Russo, P.C.*, Port Washington (*Michelle S. Russo* of counsel), and *Davis, Saperstein & Salomon, PC*, New York City (*Marc C. Saperstein* of counsel), for respondent-appellant.

OPINION OF THE COURT

RENWICK, J.

This action arises out of a construction site accident. Plaintiff, an undocumented alien from Ecuador, emigrated to the United States in 2001. In 2002, plaintiff was hired as a construction worker by third-party defendant Roadrunner Construction Corp., despite its knowledge of his immigration status. Roadrunner never requested a Social Security number from plaintiff and paid him in cash or by check, and never withheld any payroll taxes from his wages.

On October 30, 2003, plaintiff was working on a construction project in which townhouses were being built by Jefferson Townhouses, LLC (Jefferson,) the owner of the property, which had hired Roadrunner to do carpentry work. Plaintiff was performing his work on the roof of a townhouse, framing a 30-foot wall outside of the unit, when he fell two stories to the second floor through an improperly covered opening in the roof. Plaintiff sustained severe injuries, including traumatic brain injury and multiple fractures of the vertebrae.

On November 2, 2004, plaintiff commenced this action against Jefferson, among others. This Court found that plaintiff was entitled to partial summary judgment on liability based upon the violation of Labor Law § 240 (1) (*see Angamarca v New York City Partnership Hous. Dev. Fund Co., Inc.*, 56 AD3d 264, 265 [2008]). Meanwhile, the matter proceeded to trial on damages, at the conclusion of which, the jury found that plaintiff sustained total damages in the sum of $20 million: (1) $100,000 for past pain and suffering, including loss of enjoyment of life; (2) $1,531,172 for past medical expenses; (3) $74,013 for past loss of earnings; (4) $1,000,000 for future pain and suffering, including loss of enjoyment of life for 40 years; (5) $16,721,684 for future medical expenses for 40 years; (6) $573,131 for future loss of earnings for 23 years.

Jefferson appeals from the judgment seeking a new trial on the ground that the trial court improperly precluded it from cross-examining plaintiff and other witnesses about plaintiff's immigration status and his desire, expressed prior to the instant accident, of returning to Ecuador after he had earned enough money in the United States. Defendant argues that the jury should have been allowed to consider such evidence in determining its award of future lost earnings and medical costs. Defendant also argues that the damage award for future medical expenses was excessive. Plaintiff cross appeals, contesting the

adequacy of the damage award for past and future pain and suffering.

■ Although a worker's immigration status may be a legitimate factor in litigating a lost wage claim (*Balbuena v IDR Realty LLC*, 6 NY3d 338, 362 [2006]), under the facts of this case, the trial court providently exercised its discretion in precluding defendant from inquiring about plaintiff's immigration status. In addressing mitigation concerns, the *Balbuena* Court explicitly held that where a plaintiff has suffered serious injuries which prevent him from working (such as Angamarca in this case) mitigation of damages is not implicated, and therefore, his immigration status is irrelevant (*id.* at 361).

Nor can we say, in the instant case, that the trial court erred in refusing to permit cross-examination of plaintiff about his immigration status and prior desire to return to Ecuador. Any argument, by defendant, that plaintiff was subject to deportation to Ecuador or had expressed an interest, prior to the accident, in some day returning to Ecuador, in an effort to suggest that plaintiff would incur lower medical expenses in Ecuador than in the United States, would also have been inappropriate. Contrary to the dissent's suggestion, defendant proffered no evidence that deportation was anything other than a speculative or conjectural possibility. The speculation that plaintiff might at some point be deported or voluntarily return to Ecuador was so remote that it rendered the issue of citizenship of scant probative value to the calculation of damages (*see Gonzalez v City of Franklin*, 137 Wis 2d 109, 138-140, 403 NW2d 747, 759 [1987]; *Clemente v State of Cal.*, 40 Cal 3d 202, 221, 707 P2d 818, 829 [1985]; *Peterson v Neme*, 222 Va 477, 482-483, 281 SE2d 869, 871-872 [1981]).

Moreover, defendant does not dispute that it was not prepared to show relevant evidence at trial that, had plaintiff returned to his native country, his future medical expenses would have been lower than those awarded by the jury. In fact, the trial court precluded purported expert testimony on this very same issue because of its belated disclosure—less than a week before trial. Defendant does not contest that ruling in this appeal. Significantly, defendant was not prepared to present evidence from any source that would have guided the jury in determining whether plaintiff's future medical expenses would have been lower in Ecuador, and to what extent, than those awarded by the jury. Thus, under the unique facts of this case, the jury's determination of future medical expenses in Ecuador would have been mere speculation.

■ We turn to the issue of damages. The award of $100,000 for past pain and suffering and $1 million for future pain and suffering over 40 years deviates materially from for what would be reasonable compensation under the circumstances. The record shows that at the time of the accident, plaintiff was 34 years old and suffered traumatic brain injury and multiple fractures of the vertebrae, as well as rib fractures, leg fractures, and a wrist fracture. Because plaintiff's spinal fractures placed him at risk for paralysis, he was kept on bed rest during his entire six-week hospital stay. During this period, medical personnel withheld pain medication so that they could perform a proper neurological assessment, which included deliberately and repeatedly inflicting pain to identify a change in plaintiff's level of consciousness. In addition, during that time, plaintiff underwent numerous medical procedures and surgeries, including a tracheotomy to ease his breathing. Plaintiff's head injuries required surgery to remove the contused part of his brain and a portion of his skull to reduce pressure. Specifically, the surgeon removed a bone flap from plaintiff's skull and cut away a portion of the right temporal lobe, as well as other portions of the brain. Surgeons then made a pocket in plaintiff's abdomen and inserted the bone flap in the pocket, to save the bone for later re-attachment. His multiple fractures of the vertebrae resulted in increased kyphosis (curvature) of plaintiff's spine, which required surgery to halt any further kyphosis. The surgery consisted of a spinal fusion of the vertebrae and the insertion of plates, nuts, screws, and rods into plaintiff's back. Plaintiff was left with orthopedic deficits after the accident and hospital treatment, including one leg shorter than the other, a rounded spine, a malunion in his wrist, and an indentation in his face from the craniectomy. He also walks with a slow gait and has poor flexibility in his lower back. The brain injuries also resulted in cognitive impairments, primarily significant imbalance disturbance, very significant visual neglect on the left, and serious disturbances in the visual organizational realm. Due to his serious physical and cognitive impairments, plaintiff will always require some sort of supervision and assistance. In view of the devastating injuries and the deteriorating quality of life suffered by plaintiff, we find the sums of $1.5 million and $3.5 million, respectively, for past and future pain and suffering, to be a more appropriate award (*see Paek v City of New York*, 28 AD3d 207 [2006], *lv denied* 8 NY3d 805 [2007] [award of $3,000,000 for future pain and suffering over 40 years, where the plaintiff

sustained a severe brain injury resulting in permanent cognitive impairments affecting memory, concentration, organizational ability, and emotional response]; *see also Reed v City of New York*, 304 AD2d 1, 6-7 [2003], *lv denied* 100 NY2d 503 [2003] [award and past pain and suffering of $2.5 million and future pain and suffering of $2.5 million over 30 years where plaintiff suffered brain injuries that prevented her from holding a simple job for more than a few months, and also suffered seizures and memory loss]; *see also Sawtelle v Southside Hosp.*, 305 AD2d 659 [2003] [an award of $1,250,000 for past pain and suffering and $2,000,000 for future pain and suffering where plaintiff sustained a debilitating stroke following surgery]).

In view of testimony that plaintiff will would need around-the-clock care and rehabilitation services for the remainder of his life, the $16,721,684 award for future medical expenses over a projected 40-year period is not so disproportionate to what constitutes reasonable compensation as to warrant reduction. We have reviewed the remaining issues raised by defendant and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Karen S. Smith, J.), entered September 8, 2009, to the extent appealed from as limited by the briefs, awarding plaintiff Angamarca damages for future lost earnings and future medical expenses and past and future pain and suffering, should be modified, on the law and the facts, to vacate the award for past and future pain and suffering and the matter remanded for a new trial solely as to such damages, unless defendant Jefferson Townhouses, LLC, within 30 days of service of a copy of this order with notice of entry, stipulates to increase the award for past pain and suffering from $100,000 to $1,500,000 and the award for future pain and suffering from $1,000,000 to $3,500,000, and otherwise affirmed, without costs.

Tom, J.P. (dissenting in part). I respectfully take issue with the proposition expounded by the majority in this case that an alien worker's lack of permanent resident status is immaterial to his recovery of the cost of future medical treatment. The majority's conclusion that the immigration status of plaintiff is irrelevant to the award of damages for future medical expenses represents a wholly unwarranted extension of the Court of Appeals' ruling in *Balbuena v IDR Realty LLC* (6 NY3d 338 [2006]). It is a plaintiff's burden in a personal injury action to establish all elements of his or her claim, including damages, and the pertinent question for the jury is the amount required

to fairly compensate him (*see Tate v Colabello*, 58 NY2d 84, 87-88 [1983]). By precluding evidence concerning where medical services are to be provided, the trial court improperly withheld material evidence from the jury, preventing a fair appraisal of the future cost of plaintiff's care.

*Balbuena* has no bearing on the issue raised by this appeal. In that case, the Court of Appeals was confronted with the narrow question of whether an undocumented alien who was prohibited from working in the United States under the Immigration Reform and Control Act (8 USC § 1324a *et seq.* [IRCA]) could recover *lost wages* in an action under the Labor Law (6 NY3d at 348, 355; *see Han Soo Lee v Riverhead Bay Motors*, 57 AD3d 283, 284 [2008]). *Balbuena* does not address, let alone limit, consideration of a plaintiff's immigration status in regard to any item of damages. Nor has the Court of Appeals suggested that disputes must be resolved without regard to a litigant's immigration status; when material to the issue at bar, the Court has not hesitated to consider it, in one instance finding it dispositive of rights afforded by New York law (*see Katz Park Ave. Corp. v Jagger*, 11 NY3d 314, 317-318 [2008] [B-2 visitor's visa was "logically incompatible" with a primary residence in New York for rent regulation purposes]).

As augmented by the majority, the judgment appealed from awards plaintiff a total of nearly $22 million in damages, including $16,721,684 for future medical expenses over 40 years of life expectancy, an amount that defendant-appellant Jefferson Townhouses, LLC contends is unfair and excessive. Just prior to trial, Supreme Court granted plaintiff's motion in limine to preclude any mention that he is not a permanent resident of this country, "read[ing] *Balbuena* to say that you're precluded from mentioning their immigration status." However, even confined to the narrow issue actually resolved in *Balbuena*, the trial court's ruling is contrary to prevailing appellate authority (*see Coque v Wildflower Estates Devs., Inc.*, 58 AD3d 44, 54 [2008] ["it is appropriate for a jury to take the plaintiff's immigration status into consideration in determining the amount of damages for lost wages, if any, to which the plaintiff is entitled"]). Despite plaintiff's testimony at his examination before trial that he intended to work only for a few years in the United States, save some $20,000 and then return to his native Ecuador, where his family resides, plaintiff's experts presented evidence of the cost of his future medical care based exclusively on the cost of treatment in the United States. Thus, the trial

court permitted the jury to assess damages on the untoward assumption that plaintiff would remain in this country indefinitely and be subject to our prevailing cost of medical care, the most expensive in the world.

The trial court broadly forbade defendants from informing the jury that plaintiff "is not a resident alien here," stating without elaboration that it would be "too prejudicial and too speculative." Ignored by this analysis is the prejudice to the defense in being unable to dispel the obvious misimpression that plaintiff is a permanent resident.

The purpose of compensatory damages, as the nomenclature suggests, is "to indemnify the injured person for the loss suffered" (Black's Law Dictionary 416 [8th ed 2004])—that is, to reimburse the actual costs incurred as a result of his injuries, not to bestow a windfall. As stated by the Second Department, "[T]he primary basis for an award of damages is compensation, i.e., to make the injured party whole to the extent that it is possible to measure his injury in terms of money" (*Sharapata v Town of Islip*, 82 AD2d 350, 366 [1981], *affd* 56 NY2d 332 [1982]).

The operative question before this Court is whether appellant should have been permitted to inform the jury of plaintiff's nationality and the limited duration of his intended stay. By adopting the trial court's reading of *Balbuena*, the majority sets an unfortunate precedent without support in either law or logic. For instance, if injury were to be sustained by a plaintiff who is visiting the United States on a temporary visa before returning to a nation where medical care is provided at no cost, would the majority seriously propose that the trial court be permitted to withhold those facts from the jury and allow the plaintiff to present evidence valuing damages for future medical expenses at the cost of care in this country? It should be readily apparent that the cost of care in the locality where it is to be provided cannot be summarily disregarded as "irrelevant" to the calculation of future medical expenses, as Supreme Court presupposed.

It is the plaintiff's burden to prove his entitlement to damages, not the defendant's burden to disprove it. Neither the trial court nor the majority specify why it would be unduly prejudicial to disclose either plaintiff's status as a nonresident alien or his plans to return to his native country. If the purpose is to award compensation for medical expenses actually incurred, such disclosure promotes the ends of justice by obliging plaintiff

to present evidence of the cost of future medical care in Ecuador based on the likelihood of repatriation.

The *Balbuena* Court's decision not to bar recovery of lost wages was heavily influenced by policy considerations. First, the Court noted that allowing an employer of persons prohibited from working in the United States under IRCA to limit liability for wages lost due to an injury covered by the Labor Law would undermine the purpose of legislation intended for the protection of workers (*Balbuena*, 6 NY3d at 359). Second, the Court indicated that limiting or precluding the potential liability of employers of undocumented workers for lost wages would make it financially attractive to hire them, thereby rewarding unscrupulous conduct and undermining the purpose of federal immigration laws (*id.*).

Unlike the situation in *Balbuena*, no public policy concerns justify barring evidence that would limit the amount of plaintiff's recovery to reasonable future medical expenses. This is a matter in which plaintiff avoided disclosing his immigration status to his employer, and the employer avoided asking for documentation that would have revealed plaintiff's immigration status. Defendants have not sought to avoid responsibility for plaintiff's injuries, and plaintiff has identified no public policy to be served by permitting recovery of excessive damages.

In sum, it is not prejudicial to require that a plaintiff present the jury with an accurate portrayal of the likely cost of his future medical treatment, wherever it is to be rendered. To the contrary, it is unfair to prevent a defendant from putting a plaintiff to his proof by precluding the defense from presenting facts material to the accurate assessment of damages.

Accordingly, the judgment should be reversed to the extent appealed from by defendant Jefferson Townhouses, LLC, as limited by its briefs, and the matter remanded for a new trial on damages for future medical expenses.

CATTERSON and DEGRASSE, JJ., concur with RENWICK, J.; TOM, J.P., and SAXE, J., dissent in part in a separate opinion by TOM, J.P.

Judgment, Supreme Court, New York County, entered September 8, 2009, modified, on the law and the facts, to vacate the award for past and future pain and suffering, and the matter remanded for a new trial solely as to such damages, unless defendant Jefferson Townhouses, LLC, within 30 days of service of a copy of this order with notice of entry, stipulates to increase

the awards for past pain and suffering and future pain and suffering to $1,500,000 and $3,500,000, respectively, and otherwise affirmed, without costs.