Gogo v Swiander (2026 NY Slip Op 50357(U))

[*1]

Gogo v Swiander

2026 NY Slip Op 50357(U)

Decided on March 19, 2026

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2026
Supreme Court, Westchester County

Alex Gogo, Plaintiff,

againstMichael Edward Swiander and Thermodynamix LLC, Defendants.

Index No. 59080/2022

Attorney for Plaintiff:Friedman, Levy, Goldfarb, Green & Bagley, P.C. 
Nicolas Bagley, Esq. 
380 Lexington Ave, 29th FloorNew York, NY 10168(212) 307-5800Attorney for DefendantsMilber Makris Plousadis & Seiden, LLPElise Herlihy, Esq. 
100 Manhattanville Rd, Suite 4E20Purchase, NY 10577 
914-681-8700

William J. Giacomo, J.

Defendants move for an order, pursuant to CPLR 4404, setting aside the jury verdict rendered in this action as plaintiff allegedly failed to demonstrate his injuries constitute a serious injury under the Insurance Law. Defendants further move for an order setting aside or reducing the awards for past and future pain and suffering; reducing or vacating the jury awards for past and future medical expenses; and scheduling a collateral source hearing pursuant to CPLR 4545 to reduce the jury award for past medical expenses.
Papers Considered NYSCEF Doc. No. 79-141
1. Notice of Motion/Affirmation in Support by Elise Herlihy, Esq./Memorandum of Law in Support/Exhibits A-F/Exhibits 3-21
2. Affirmation of Nicolas Bagley, Esq. in Opposition/ Exhibits 1-26
3. Affirmation of Elise Herlihy, Esq. in Reply/ Exhibit AFACTUAL AND PROCEDURAL BACKGROUNDIn brief, plaintiff commenced this action by filing a summons and complaint on April 11, 2022. Plaintiff alleged that he sustained serious injuries as a result of a motor vehicle accident that occurred on January 13, 2022 and that the accident was due to defendants' negligence. At the time of the accident, plaintiff was a senior in high school. Plaintiff had asserted that, as a result of the accident, he sustained a traumatic brain injury and that this injury qualifies as a serious injury as defined in Insurance Law 5102(b).
In prior motion practice, plaintiff was granted summary judgment on liability. A trial on damages took place between October 21-30, 2025. A verdict was returned on October 30, 2025. The jury responded yes to the following questions:
"Did plaintiff Alex Gogo sustain a permanent consequential limitation of use of a body organ or member as result of the accident on January 13, 2022?Did plaintiff Alex Gogo sustain a significant limitation of use of a body function or system as a result of the accident on January 13, 2022?Did plaintiff Alex Gogo sustain a medically determined injury or impairment of a non-permanent nature as a result of the accident on January 13, 2022 that prevented him from performing substantially all of the material acts that constituted his usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the accident?" The jury awarded plaintiff $1 million for past pain and suffering, $3 million future pain and suffering, $106,000 in past medical expenses and $40,000 in future medical expenses.
Instant MotionDefendants argue that the verdict should be set aside, as plaintiff failed to establish that he sustained a serious injury as required under the Insurance Law. They also seek to set aside or vacate the damage awards as excessive. 

DISCUSSION
Setting Aside the Jury Verdict
Defendants now move pursuant to 4404 (a) for a directed verdict and to set aside the jury verdict as against the weight of evidence. CPLR 4404 (a) provides, in relevant part, that after a jury trial, "upon the motion of any party . . . , the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence."
"A motion for judgment as a matter of law pursuant to CPLR 4404 may be granted only when the trial court determines that, upon the evidence presented, there is no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury upon the evidence presented at trial, and no rational process by which the jury could find in favor of the nonmoving party." Messina v Staten Is. Univ. Hosp., 121 AD3d 867, 867 (2d Dept 2014) (internal citations omitted). A jury verdict should not be set aside as contrary to the weight of the evidence pursuant to CPLR 4404 (a) unless the jury could not have reached the verdict on any fair interpretation of the evidence. Walter v Matano, 81 AD3d 636 (2d Dept 2011). "Whether a verdict should be set aside as contrary to the weight of the evidence is not a question of law, but instead requires the discretionary balancing of various factors." Palermo v Original California Taqueria, Inc., 72 AD3d 917, 918 (2d Dept 2010). It is [*2]well settled that "[i]ssues of credibility are for the jury, which had the opportunity to observe the witnesses and the evidence. Its resolution is entitled to deference." Aronov v Kanarek, 166 AD3d 574, 575 (2d Dept 2018) (internal quotation marks omitted). 
Serious Injury"To recover damages for noneconomic loss related to personal injury allegedly sustained in a motor vehicle accident, the plaintiff is required to present nonconclusory expert evidence sufficient to support a finding not only that the alleged injury is serious within the meaning of Insurance Law § 5102 (d), but also that the injury was causally related to the accident."
Valentin v Pomilla, 59 AD3d 184, 186 (1st Dept 2009) (internal quotation marks and citation omitted).In pertinent part, a "serious injury" has been defined as permanent loss of use of a body organ, a significant limitation of use of a body function, or an "impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." Insurance Law § 5102 (d).
In support of their motion, defendants provide various parts of the trial testimony and evidence to support their argument that the verdict should be set aside. For example, they claim that plaintiff fails to establish that he suffered from a serious injury because he was only diagnosed with a concussion when he was initially seen in the emergency room, that he is still able to attend college and that he can also drive. They produced expert witnesses who testified that plaintiff's brain CT scan and MRI were both normal and that he did not suffer from a traumatic brain injury.
The Court has reviewed the transcripts, which include deposition testimony from plaintiff and defendants' witnesses. In relevant part, the Court finds there was a valid line of reasoning and permissible inferences which could have led a rational jury to the conclusion that plaintiff suffered a serious injury. For illustration purposes, the Court will reference plaintiff's expert's testimony with respect to the permanent consequential limitation of use or significant limitation of use categories of Insurance Law § 5102 (d). Dr. Mark Herceg, a neuropsychology expert, saw plaintiff on March 29, 2024 and performed a neuropsychological evaluation. Dr. Herceg testified that his opinion was based on his review of the medical records and testing he performed on the plaintiff. He opined that plaintiff had indeed sustained a brain injury from the accident. For instance, he noted that plaintiff performed in the first percentile for visual memory, meaning that it was severely impaired. He also testified that there were no issues with plaintiff exaggerating his symptoms.
Dr. Herceg opined to a reasonable degree of neuropsychological certainty based on the testing, medical history and scores, that plaintiff suffered a traumatically induced significant limitation of the use of his brain. He also provided his medical opinion that plaintiff suffered a traumatically induced permanent consequential limitation of his brain based on the medical history and his evaluation and that, based on the nature of the injury, the medical reports and the analysis of the scores, the brain injury was permanent.
It is well settled that "[i]n considering the conflicting testimony of the parties' respective expert witnesses, the jury was not required to accept one expert's testimony over that of the other, but was entitled to accept or reject either expert's position in whole or in part." Mehmeti v Miller, 196 AD3d 475, 476 (2d Dept 2021) (internal quotation marks omitted). Here, the jury's [*3]determination that the plaintiff sustained a serious injury "was based upon a fair interpretation of the evidence presented at trial and, thus, it will not be disturbed." Fils v Stanford, 99 AD3d 756, 756 (2d Dept 2012). Further, as the jury determined that plaintiff's injuries met two categories of the No Fault threshold, the Court need not address the proof with respect to the 90/180 category or the injuries sustained to the neck and back. See Dingle v New York City Tr. Auth., 139 AD3d 513, 514 (1st Dept 2013) ("if the trier of fact determines that plaintiff sustained a serious injury to her right knee, she can recover for any other injuries shown to be causally related to the accident, even those that do not meet the serious injury threshold").
Moreover, the Court finds sufficient evidence in the record to support the jury's determination. Even without Dr. Herceg, plaintiff proffered the testimony and medical records from his treating neurologist, Dr. May, who opined that plaintiff's brain injury was traumatic and a serious injury.
In addition, plaintiff testified that, as a result of the accident, he still consistently experiences headaches and receives testing accommodations in college due to memory issues. As a result of his traumatic brain injury, plaintiff still finds it difficult to finish exams on time, even with his accommodations. Although defendants claim that plaintiff's independence at school, among other things, undermines any claim of a serious injury, the jury is entitled to resolve any credibility issues or conflicting inferences. See e.g. Bravato v Berkshire Life Ins. Co., 69 NY2d 916, 918 (1987) ("where, as here, conflicting inferences may reasonably be drawn from evidence, a question of fact is presented for resolution by the jury"). Accordingly, defendants' contention that plaintiff's proof fails to satisfy any statutory category of a serious injury is rejected, and the portion of defendants' motion seeking a directed verdict or to set aside the verdict on this basis, is denied.
Damages"While the amount of damages to be awarded for personal injuries is a question for the jury, and the jury's determination is entitled to great deference, it may be set aside if the award deviates materially from what would be reasonable compensation." Chung v Shaw, 175 AD3d 1237, 1239 (2d Dept 2019) (internal quotation marks and citations omitted); See CPLR 5501(c). Further, "[a]lthough prior damage awards in cases involving similar injuries are not binding upon the courts, they guide and enlighten them with respect to determining whether a verdict in a given case constitutes reasonable compensation." Chung v Shaw, 175 AD3d at 1239 (internal quotation marks omitted).
Under the circumstances of this case, after reviewing the record and comparing it to jury awards in other traumatic brain injury cases, the Court finds that both the past and future pain and suffering awards deviate from what would be reasonable compensation. For example, Angamarca v New York City Partnership Hous. Dev. Fund, Inc., 87 AD3d 206 (1st Dept 2011), the 34-year old plaintiff sustained a traumatic brain injury and multiple fractures of the vertebrae after falling in a construction accident. The Court held, in relevant part:
"The brain injuries also resulted in cognitive impairments, primarily significant imbalance disturbance, very significant visual neglect on the left, and serious disturbances in the visual organizational realm. Due to his serious physical and cognitive impairments, plaintiff will always require some sort of supervision and assistance. In view of the devastating injuries and the deteriorating quality of life suffered by plaintiff, we find the sums of $ 1.5 million and $ 3.5 million, respectively, for past and future pain and suffering, to be a more appropriate award."
Id. at 210.In that case, due to the nature of the injuries, the Court increased the jury's awards from $100,000 for past pain and suffering and $1 million for future pain and suffering to $1.5 million and $3.5 million respectively.
As another example, in Rappold v Snorac, Inc. (289 AD2d 1044, 1046 [4th Dept 2021]), a 22 year old plaintiff suffered a "severe brain injury that impaired cognitive function and most physical functions, resulting in the need for around-the-clock care," as a result of motor vehicle accident. Although the jury awarded the plaintiff $3 and $12 million dollars for past and future pain and suffering, respectively, the Appellate Division reduced the award to $1 million and $6 million. 
In Turturro v City of New York (127 AD3d 732, 734 [2d Dept 2015]), a 12 year old sustained a severe head and brain injury, among other things as a result of being struck by a car while riding his bicycle. The Court held the following, in relevant part:
"As a result of the accident, the infant plaintiff was in a coma for approximately five months. He sustained, among other things, a severe head and brain injury, including extensive fractures to the skull, subdural hematomas, and intracranial hypertension. He also sustained fractures to his ankle and hip, and a collapsed lung. He underwent numerous surgeries and developed several complications, including a seizure disorder. The brain injuries permanently diminished the infant plaintiff's cognitive and motor functioning."The Appellate Division reduced the past and future pain and suffering awards from $6 million and $10 million to the sum of $3 million, and $7 million, respectively.
In Garrison v Lapine (72 AD3d 1441, 1443 [3d Dept 2010]) (internal quotation marks and citation omitted), the Court upheld the damages award for a traumatic brain injury sustained in an automobile accident when the jury awarded plaintiff $500,000 for past pain and suffering and $2 million for future pain and suffering for a period of 31 years. The Court found that "the record is replete with expert and lay proof regarding the devastating effect that plaintiff's resulting [cognitive and behavioral problems] had on her to the time of trial and will continue to have on her life." In that case, plaintiff's speech became jumbled, her personality changed, she had limited ability to interact with family, and suffered from headaches that caused her to sleep all day.
Lastly, as another example, in Lindenman v Kreitzer (105 AD3d 477, 478 [1st Dept 2013]), a plaintiff who suffered a brain injury was awarded $1.5 million for past pain and suffering and $4 million for future pain and suffering. The Court reduced the awards to $500,000 and $750,000 respectively and held the following, in relevant part:
"The trial court's award of $5,500,000 for past and future pain suffering deviated materially from reasonable compensation to the extent indicated. Although plaintiff Bruce Lindenman demonstrated that he suffered a brain injury, he did not undergo surgery and was able to continue to engage in activities such as driving and playing tennis." Here, it is undisputed that, while plaintiff sustained a traumatic brain injury and has an additional 56 years of life expectancy, he is still able to attend college, drive, live independently, travel abroad and he retains most of his functional abilities. Thus, the award in this case, in comparison to other awards where plaintiffs had much higher cognitive impairments and life altering deficits requiring supervision and assistance, is excessive. Therefore, in this case, the [*4]Court finds that an award of $750,000 for past pain and suffering and an award of $2 million for future pain and suffering is more within the range of reasonable compensation. Unless the plaintiff stipulates to reduce the verdict by the amount found to be excessive, the proper procedure requires the court to direct a new trial on the issue of damages. Anderson v Stephen M. Donis, D.P.M., P.C., 150 AD2d 414, 416 (2d Dept 1989).
Accordingly, the portion of the defendants' motion to reduce the jury awards for past and future pain and suffering is granted, to the extent that unless plaintiff stipulates to decrease the awards to $750,000 for past pain and suffering and $2 million for future pain and suffering, the matter will be remanded to the trial assignment part for a new trial solely as to such damages. 
Past and Future Medical Expenses"Awards of damages for past and future medical expenses must be supported by competent evidence which establishes the need for, and the cost of, medical care." Chung v Shaw, 175 AD3d at 1239-1240 (internal quotation marks omitted). Here, plaintiff testified that his past medical and dental expenses were approximately $100,000 and his counsel stated that the bills were calculated to be $105,831.13. The bills were admitted into evidence. Accordingly, the jury's award for $106,000 for the cost of the past medical expenses is reasonable in light of the testimony and will not be disturbed. 
Dr. Herceg testified that plaintiff would benefit from seeing a psychotherapist in the future who specialized in brain injuries and he estimated the costs of the visits to be approximately $175-250 a session. Plaintiff has a life expectancy of an additional 56 years. Assuming that plaintiff spent one year having weekly meetings with a psychotherapist, this would amount to approximately $13,000. As a result, it was reasonable for the jury to conclude that plaintiff would require future medical costs in the amount of $40,000, at a minimum. Accordingly, the Court declines to reduce this award. See e.g. Reed v City of New York, 304 AD2d 1, 9 (1st Dept 2003) ("Defendants maintain that the jury award of $180,000 for future physical therapy lacks evidentiary foundation. A review of the record, however, reveals that the jury could have reasonably concluded, based on Dr. Stiler's and Dr. Block's testimony, and the absence of any testimony whatsoever to the contrary, that plaintiff would require such therapy for the rest of her life on an as-needed basis").
Collateral Source HearingHere, defendants have presented evidence that a collateral source hearing is warranted to review and determine the costs of plaintiff's past medical expenses. For example, defendants allege that some treating providers' invoices have been settled by No Fault or private insurance and must be included in a set off in defendants' favor. See e.g. Redish v Adler, 195 AD3d 452, 453 (1st Dept 2021) ("St. Barnabas demonstrated its entitlement to a collateral source hearing by showing with 'reasonable certainty' that medical expenses were or will be replaced, in whole or in part, from a collateral source (CPLR 4545 [a])"). 
As plaintiff does not oppose defendants' request for a collateral source hearing with respect to plaintiff's past medical expenses, this request is granted.
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.

CONCLUSION
Accordingly, it is hereby
ORDERED that defendants' motion is granted to the extent that the verdict is set aside and a new trial shall be held on the question of damages (limited to past and future pain and [*5]suffering) unless, within 30 days of entry of this Decision and Order, plaintiff files a written stipulation consenting to a reduction of the amount of damages for past and future pain and suffering to $750,000 and $2 million; and it is further
ORDERED that the Court will conduct a hearing on May 12, 2026 at 10:00 a.m. in Courtroom 102 for the purpose of identifying collateral sources pursuant to CPLR 4545; and it is further
ORDERED that the remainder of defendants' requested relief, as set forth in the decision, is denied.
The above constitutes the Decision and Order of this Court.
Dated: March 19, 2026White Plains, New YorkHON. WILLIAM J. GIACOMO, J.S.C.